# EXHIBIT 10

# Contract Purchase Agreement : 6004594
# Date : 06/13/2022

*To* :

| | |
|---|---|
| Company | TROYS TOWING INC |
| Contact | Troy Ginyard |
| Address | 9615 GRINNELL |
| | PO BOX 13838 |
| | DETROIT, MI 48213 |


CITY of DETROIT

*From* :

| | |
|---|---|
| Company | City of Detroit |
| Contact | PAMELA CRUMP |
| Address | 2 WOODWARD AVENUE |
| | STE 1100 |
| | DETROIT, MI 48226 |
| | UNITED STATES |
| Phone | |
| Fax | |
| E-mail | |

This document has important legal consequences. The information contained in this document is proprietary of the City of Detroit. It shall not be used, reproduced, or disclosed to others without the express and written consent of the City of Detroit.

This agreement between the City of Detroit and TROYS TOWING INC is authorized for binding commitment. This agreement will be effective from  **08/01/2022** to **07/31/2027**.

**Chief Procurement Officer**

*Sandra Yu Stahl*

# Contract Purchase Agreement : 6004594
# Date : 06/13/2022


CITY of DETROIT

| Contract Agreement | 6004594 |
|---|---|
| Contract Agreement Date | 06/13/2022 |
| Change Order | 0 |
| Revision | 0 |
| Agreement Amount | 187,500.00 USD |

Procurement BU **City of Detroit**
**2 WOODWARD AVENUE**
**STE 1100**
**DETROIT, MI 48226**
**UNITED STATES**

Supplier **TROYS TOWING INC**
**Troy Ginyard**
**9615 GRINNELL**
**PO BOX 13838**
**DETROIT, MI 48213**
**(313)5791869**

Notes    USD = US Dollar
Furnish Police Authorized Towing Services, in accordance with RFP 22PC182115

| Procurement Specialist | Supplier Number | Payment Terms | Freight Terms | FOB | Shipping Method |
|---|---|---|---|---|---|
| **PAMELA CRUMP** | **1117299** | **Net 30** | **Account of Seller** | **Delivered** | **Lowest Cost Carrier** |

| Start Date | End Date |
|---|---|
| **08/01/2022** | **07/31/2027** |

| Attachments | | | |
|---|---|---|---|
| Type | File Name or URL | Title | Description |
| File | Addendum No. 3 RFP 182115, Police Towing (Oracle).pdf | Addendum No. 3 RFP 182115, Pol | ADDENDUM NO. 3 |
| File | RFP 182115 Addendum No. 1 (Oracle).pdf | RFP 182115 Addendum No. 1 (Ora | ADDENDUM NO. 1 |
| File | DPD - towing Prof Serv Contract.doc | DPD - towing Prof Serv Contrac | SAMPLE CONTRACT |
| File | Police Towers RFP FINAL 2022 (Oracle).pdf | Police Towers RFP FINAL 2022 ( | REQUEST FOR PROPOSALS |
| File | Addendum No. 2 RFP 182115, Police Towing, Questions and Responses (Oracle).pdf | Addendum No. 2 RFP 182115, Pol | ADDENDUM NO. 2 - Q & A |

**Terms and Conditions :**

Please see below for general conditions.

**Special Terms :**

## Contract Purchase Agreement : 6004594
**Date :** 06/13/2022

**TERMS AND CONDITIONS**
Last Updated August 26, 2022

Acceptance of this Purchase Order constitutes acceptance of the City of Detroit's Non-Technology General Terms and Conditions or Technology General Terms and Conditions, as applicable.  The applicable general terms and conditions are located on the City's website at the URL below:

https://detroitmi.gov/departments/office-chief-financial-officer/ocfo-divisions/office-contracting-and-procurement/city-general-terms-and-conditions

Contract Purchase Agreement  6004594

**Contract Terms and Conditions**

# PROFESSIONAL SERVICES CONTRACT

## BETWEEN

## CITY OF DETROIT, MICHIGAN

## AND

Troy's Towing, Inc.

## CONTRACT NO.

## 6004594

989

## Table of Contents

Article 1: Definitions .................................................................. 3

Article 2: Engagement of Contractor ........................................ 5

Article 3: Contractor's Representations and Warranties ........... 5

Article 4: Contract Effective Date and Time of Performance ... 6

Article 5: Data To Be Furnished Contractor ............................. 7

Article 6: Contractor Personnel and Contract Administration ... 7

Article 7: Compensation ........................................................... 8

Article 8: Maintenance and Audit of Records .......................... 8

Article 9: Indemnity .................................................................. 9

Article 10: Insurance ................................................................ 10

Article 11: Default and Termination ......................................... 12

Article 12: Assignment ............................................................. 14

Article 13: Subcontracting ........................................................ 14

Article 14: Conflict of Interest .................................................. 15

Article 15: Confidential Information ......................................... 16

Article 16: Compliance with Laws ........................................... 16

Article 17: Office of Inspector General .................................... 16

Article 18: Amendments ........................................................... 18

Article 19: Fair Employment Practices ..................................... 18

Article 20: Notices .................................................................... 18

Article 21: Proprietary Rights and Indemnity ........................... 19

Article 22: Force Majeure ......................................................... 20

Article 23: Waiver ..................................................................... 21

Article 24: Miscellaneous ......................................................... 21

Article 25: Invoice Submission and Payment ........................... 22

Article 26: Board of Ethics ....................................................... 23

Signature Page ........................................................................... 24

EXHIBIT A: SCOPE OF SERVICES ........................................ 25

EXHIBIT A-1: APPLICATION BY VEHICLE OWNER FOR POVERTY WAIVER

EXHIBIT B: FEE SCHEDULE ................................................. 37

EXHIBIT C: STATEMENT OF POLITICAL CONTRIBUTIONS AND EXPENDITURES ......... 38

EXHIBIT D: COVID GENERAL CONDITIONS ...................... 40

# CITY OF DETROIT
## PROFESSIONAL SERVICES CONTRACT

This Professional Services Contract ("Contract") is entered into by and between the City of Detroit, a Michigan municipal corporation, acting by and through its Police Department ("City"), and Troy's Towing, Inc., a Michigan Corporation, with its principal place of business located at 9615 Grinnell Street, Detroit, MI 48213 ("Contractor").

### Recitals:

Whereas, the City desires to engage the Contractor to render certain technical or professional services ("Services") as set forth in this Contract; and

Whereas, the Contractor desires to perform the Services as set forth in this Contract; and Accordingly, the parties agree as follows:

### Article 1: Definitions

1.01    The following words and expressions or pronouns used in their stead shall be construed as follows:

"Additional Services" shall mean any services in addition to the services set forth in Exhibit A that are related to fulfilling the objectives of this Contract and are agreed upon by the parties by written Amendment.

"Amendment" shall mean modifications or changes in this Contract that have been mutually agreed upon by the City and the Contractor in writing and approved by the City Council.

"Associates" shall mean the personnel, employees, consultants, subcontractors, agents, and parent company of the Contractor or of any Subcontractor, now existing or subsequently created, and their agents and employees, and any entities associated, affiliated, or subsidiary to the Contractor or to any subcontractor, now existing or subsequently created, and their agents and employees.

"City" shall mean the City of Detroit, a municipal corporation, acting through the office or department named in the Contract as contracting for the Services on behalf of the City.

"City Council" shall mean the legislative body of the City of Detroit.

"Contract" shall mean each of the various provisions and parts of this document, including all attached Exhibits and all Amendments, as executed and approved by the appropriate City departments or offices and by the City Council.

"Contractor" shall mean the party that contracts with the City by way of this Contract, whether an individual, sole proprietorship, partnership, corporation, or other form of business organization, and its heirs, successors, personnel, agents, employees, representatives, executors, administrators and assigns.

"Exhibit A" is the Scope of Services for this Contract and sets forth all pertinent data relating to performance of the Services.

"Exhibit B" is the Fee Schedule for this Contract and sets forth the amount of compensation to be paid to the Contractor, including any Reimbursable Expenses, and any applicable hourly rate information.

"Exhibit C" is the Contractor's Statement of Political Contributions and Expenditures.

"Exhibit D" is the COVID-19 General Conditions required for eligible expenses reimbursement.

"Public Servant" means the Mayor, members of City Council, City Clerk, appointive officers, any member of a board, commission or other voting body established by either branch of City government or the City Charter, and any appointee, employee or individual who provides services to the City within or outside of its offices or facilities pursuant to a personal services contract."

"Records" shall mean all books, ledgers, journals, accounts, documents, and other collected data in which information is kept regarding the performance of this Contract.

"Reimbursable Expenses" shall mean only those costs incurred by the Contractor in the performance of the Services, such as travel costs and document reproduction costs that are identified in Exhibit B as reimbursable.

"Services" shall mean all work that is expressly set forth in Exhibit A, the Scope of Services, and all work expressly or impliedly required to be performed by the Contractor in order to achieve the objectives of this Contract.

"Subcontractor" shall mean any person, firm or corporation, other than employees of the Contractor, that contracts with the Contractor, directly or indirectly, to perform in part or assist the Contractor in achieving the objectives of this Contract.

"Technology" shall mean any and all computer-related components and systems, including but not limited to computer software, computer code, computer programs, computer hardware, embedded integrated circuits, computer memory and data storage systems, whether in the form of read-only memory chips, random access memory chips, CD-ROMs, floppy disks, magnetic tape, or some other form, and the data retained or stored in said computer memory and data storage systems.

"Unauthorized Acts" shall mean any acts by a City employee, agent or representative that are not set forth in this Contract and have not been approved by City Council as part of this Contract.

"Work Product" shall mean the originals, or copies when originals are unavailable, of all materials prepared by the Contractor under this Contract or in anticipation of this Contract, including but not limited to Technology, data, studies, briefs, drawings, maps, models, photographs, files, records, computer printouts, estimates, memoranda, computations, papers, supplies, notes, recordings, and videotapes, whether such materials are reduced to writing, magnetically or optically stored, or kept in some other form.

## Article 2: Engagement of Contractor

2.01   By this Contract, the City engages the Contractor and the Contractor hereby agrees to faithfully and diligently perform the Services set forth in Exhibit A, in accordance with the terms and conditions contained in this Contract.

2.02   The Contractor shall perform in a satisfactory manner as shall be determined within the sole and reasonable discretion of the City. In the event that there shall be any dispute between the parties with regard to the extent, character and progress of the Services to be performed or the quality of performance under this Contract, the interpretation and determination of the City shall govern.

2.03   The Contractor shall confer as necessary and cooperate with the City in order that the Services may proceed in an efficient and satisfactory manner. The Services are deemed to include all conferences, consultations and public hearings or appearances deemed necessary by the City to ensure that the Contractor will be able to properly and fully perform the objectives as set forth in this Contract.

2.04   All Services are subject to review and approval of the City for completeness and fulfillment of the requirements of this Contract. Neither the City's review, approval nor payment for any of the Services shall be construed to operate as a waiver of any rights under this Contract, and the Contractor shall be and will remain liable in accordance with applicable law for all damages to the City caused by the Contractor's negligent performance or nonperformance of any of the Services furnished under this Contract.

2.05   The Services shall be performed as set forth in Exhibit A, or at such other locations as are deemed appropriate by the City and the Contractor for the proper performance of the Services.

2.06   The City and the Contractor expressly acknowledge their mutual understanding and agreement that there are no third party beneficiaries to this Contract and that this Contract shall not be construed to benefit any persons other than the City and the Contractor.

2.07   It is understood that this Contract is not an exclusive services contract, that during the term of this Contract the City may contract with other firms, and that the Contractor is free to render the same or similar services to other clients, provided the rendering of such services does not affect the Contractor's obligations to the City in any way.

## Article 3: Contractor's Representations and Warranties

3.01   To induce the City to enter into this Contract, the Contractor represents and warrants that the Contractor is authorized to do business under the laws of the State of Michigan and is duly qualified to perform the Services as set forth in this Contract, and that the execution of this Contract is within the Contractor's authorized powers and is not in contravention of federal, state or local law.

3.02   The Contractor makes the following representations and warranties as to any Technology it may provide under this Contract:

DocuSign Envelope ID: 4154BE88-1CC6-46A6-ABD9-8673C7288B8F

a) That all Technology provided to the City under this Contract shall perform according to the specifications and representations set forth in Exhibit A and according to any other specifications and representations, including any manuals, provided by the Contractor to the City;

b) That the Contractor shall correct all errors in the Technology provided under this Contract so that such technology will perform according to Contractor's published specifications;

c) That the Contractor has the full right and power to grant the City a license to use the Technology provided pursuant to this Contract;

d) That any Technology provided by Contractor under this Contract is free of any software, programs or routines, commonly known as "disabling code," that are designed to cause such Technology to be destroyed, damaged, or otherwise made inoperable in the course of the use of the Technology;

e) That any Technology containing computer code and provided under this Contract is free of any known or reasonably discoverable computer program, code or set of instructions, commonly known as a "computer virus," that is not designed to be a part of the Work Product and that, when inserted into the computer's memory: (i) duplicates all or part of itself without specific user instructions to do so, or (ii) erases, alters or renders unusable any Technology with or without specific user instructions to do so, or (iii) that provide unauthorized access to the Technology and

3.03 That all Technology shall be delivered new and in original manufacturer's packaging and shall be fully warranted for repair or replacement during the term of this Contract as amended or extended.

3.04 That any Technology that it is provided to the City shall:

a) Accurately recognize and process all time and date data including, but not limited to, daylight savings time and leap year data, and

b) Use accurate same-century, multi-century, and similar date value formulas in its calculations, and use date data interface values that accurately reflect the correct time, date and century.

### Article 4: Contract Effective Date and Time of Performance

4.01 This Contract shall be approved by the required City departments, approved by the City Council, and signed by the City's Chief Procurement Officer. The effective date of this Contract shall be the date upon which the Contract has been authorized by resolution of the City Council. The term of this Contract shall terminate on July 31, 2027 or sooner as provided in this Contract.

4.02 Prior to the approvals set forth in Section 4.01, the Contractor shall have no authority to begin work on this Contract. The Chief Procurement Officer shall not authorize any payments to the Contractor, nor shall the City incur any liability to pay for any services rendered or to reimburse the Contractor for any expenditure, prior to such award and approvals.

4.03 The City and the Contractor agree that the commencement and duration of the Contractor's performance under this Contract shall be determined as set forth in Exhibit A.

### Article 5: Data To Be Furnished Contractor

5.01    Copies of all information, reports, records, and data as are existing, available, and deemed neces-
sary by the City for the performance of the Services shall be furnished to the Contractor upon the
Contractor's request.  With the prior approval of the City, the Contractor will be permitted access
to City offices during regular business hours to obtain any necessary data.  In addition, the City
will schedule appropriate conferences at convenient times with administrative personnel of the
City for the purpose of gathering such data.

### Article 6: Contractor Personnel and Contract Administration

6.01    The Contractor represents that, at its own expense, it has obtained or will obtain all personnel and
equipment required to perform the Services.  It warrants that all such personnel are qualified and
possess the requisite licenses or other such legal qualifications to perform the services assigned.
If requested, the Contractor shall supply a résumé of the managerial staff or consultants it propos-
es to assign to this Contract, as well as a dossier on the Contractor's professional activities and
major undertakings.

6.02    The City may interview the Contractor's managerial staff and other employees assigned to this
Contract.  The Contractor shall not use any managerial staff or other employees to whom the City
objects and shall replace in an expedient manner those rejected by the City.  The Contractor shall
not replace any of the personnel working on this Contract with new personnel without the prior
written consent of the City.

6.03    When the City deems it reasonable to do so, it may assign qualified City employees or others to
work with the Contractor to complete the Services.  Nevertheless, it is expressly understood and
agreed by the parties that the Contractor shall remain ultimately responsible for the proper com-
pletion of the Services.

6.04    The relationship of the Contractor to the City is and shall continue to be that of an independent
contractor and no liability or benefits, such as workers' compensation, pension rights or liabilities,
insurance rights or liabilities, or other rights or liabilities arising out of or related to a contract for
hire or employer/employee relationship shall arise or accrue to either party or either party's agent,
Subcontractor or employee as a result of the performance of this Contract.  No relationship other
than that of independent contractor shall be implied between the parties or between either party's
agents, employees or Subcontractors.  The Contractor agrees to indemnify, defend, and hold the
City harmless against any claim based in whole or in part on an allegation that the Contractor or
any of its Associates qualify as employees of the City, and any related costs or expenses, includ-
ing but not limited to legal fees and defense costs.

6.05    The Contractor warrants and represents that all persons assigned to the performance of this Con-
tract shall be regular employees or independent contractors of the Contractor, unless otherwise
authorized by the City. The Contractor's employees' daily working hours while working in or
about a City of Detroit facility shall be the same as those worked by City employees working in
the facility, unless otherwise directed by the City.

6.06    The Contractor shall comply with and shall require its Associates to comply with all security reg-
ulations and procedures in effect on the City's premises.

## Article 7: Compensation

7.01    Contractor shall receive payment from vehicle owners for towing and storage services as set forth
in exhibit B.  To the extent Contractor is entitled to receive compensation directly from the City,
compensation for Services provided shall not exceed the amount of <u>One Hundred Eighty-Seven
Thousand, Five Hundred and no/100 Dollars ($187,500.00)</u>, inclusive of expenses, and will be
paid in the manner set forth in Exhibit B.  Unless this Contract is amended pursuant to Article 16,
this amount shall be the entire compensation to which the Contractor is entitled to receive from
the City for the performance of Services under this Contract.

7.02    Payment by the City for Services provided under this Contract is governed by the terms of Ordi-
nance No. 42-98, entitled "Prompt Payment of Vendors," being Sections 17-5-281 through 17-5-
288 of the 2019 Detroit City Code.

The City employee responsible for accepting performance under this Contract is:

Brandon Lewis
Captain
11631 Mt. Elliot Ct
Detroit, Michigan 48212
Telephone: (313) 596-1234
Email Address:  LewisB398@detroitmi.gov

The City employee from whom payment should be requested is:

Management Services
Commanding Officer
11631 Mt. Elliot Ct
Detroit, Michigan 48212
Telephone: (313) 596-1234
Email Address:  managementservices@detroitmi.gov

## Article 8: Maintenance and Audit of Records

8.01    The Contractor shall maintain full and complete Records reflecting all of its operations related to
this Contract.  The Records shall be kept in accordance with generally accepted accounting prin-
ciples and maintained for a minimum of three (3) years after the Contract completion date.

8.02    The City and any government-grantor agency providing funding under this Contract shall have
the right at any time without notice to examine and audit all Records and other supporting data of
the Contractor as the City or any agency deems necessary.

a)    The Contractor shall make all Records available for examination during normal business
hours at its Detroit offices, if any, or alternatively at its facility nearest Detroit.  The City and

any government-grantor agency providing funds for the Contract shall have this right of inspection. The Contractor shall provide copies of all Records to the City or to any such government-grantor agency upon request.

b) If in the course of such inspection the representative of the City or of another government-grantor agency should note any deficiencies in the performance of the Contractor's agreed upon performance or record-keeping practices, such deficiencies will be reported to the Contractor in writing. The Contractor agrees to promptly remedy and correct any such reported deficiencies within ten (10) days of notification.

c) Any costs disallowed as a result of an audit of the Records shall be repaid to the City by the Contractor within thirty (30) days of notification or may be set off by the City against any funds due and owing the Contractor, provided, however, that the Contractor shall remain liable for any disallowed costs exceeding the amount of the setoff.

d) Each party shall pay its own audit costs. However, if the dollar amount of the total disallowed costs, if any, exceeds three percent (3%) of the dollar amount of this Contract, the Contractor shall pay the City's audit costs.

e) Nothing contained in this Contract shall be construed or permitted to operate as any restriction upon the powers granted to the Auditor General by the City Charter, including but not limited to the powers to audit all accounts chargeable against the City and to settle disputed claims.

8.03    The Contractor agrees to include the covenants contained in Sections 8.01 and 8.02 in any contract it has with any Subcontractor, consultant or agent whose services will be charged directly or indirectly to the City for Services performed pursuant to this Contract.

**Article 9: Indemnity**

9.01    The Contractor agrees to indemnify, defend, and hold the City harmless against and from any and all liabilities, obligations, damages, penalties, claims, costs, charges, losses and expenses (including, without limitation, fees and expenses for attorneys, expert witnesses and other consultants) that may be imposed upon, incurred by, or asserted against the City or its departments, officers, employees, or agents by reason of any of the following occurring during the term of this Contract:

a) Any negligent or tortious act, error, or omission attributable in whole or in part to the Contractor or any of its Associates; and

b) Any failure by the Contractor or any of its Associates to perform their obligations, either express or implied, under this Contract; and

c) Any and all injury to the person or property of an employee of the City where such injury arises out of the Contractor's or any of its Associates performance of this Contract.

9.02    The Contractor shall examine all places where it will perform the Services in order to determine whether such places are safe for the performance of the Services. The Contractor undertakes and

assumes all risk of dangerous conditions when not performing Services inside City offices. The Contractor also agrees to waive and release any claim or liability against the City for personal injury or property damage sustained by it or its Associates while performing under this Contract on premises that are not owned by the City.

9.03   In the event any action shall be brought against the City by reason of any claim covered under this Article 9, the Contractor, upon notice from the City, shall at its sole cost and expense defend the same.

9.04   The Contractor agrees that it is the Contractor's responsibility and not the responsibility of the City to safeguard the property that the Contractor or its Associates use while performing this Contract. Further, the Contractor agrees to hold the City harmless for any loss of such property used by any such person pursuant to the Contractor's performance under this Contract.

9.05   The indemnification obligation under this Article 9 shall not be limited by any limitation on the amount or type of damages, compensation, or benefits payable under workers' compensation acts or other employee benefit acts.

9.06   The Contractor agrees that this Article 9 shall apply to all claims, whether litigated or not, that may occur or arise between the Contractor or its Associates and the City and agrees to indemnify, defend and hold the City harmless against any such claims.

## Article 10: Insurance

10.01  During the term of this Contract, the Contractor shall maintain the following insurance, at a minimum and at its expense:

| TYPE | AMOUNT NOT LESS THAN |
|---|---|
| a.  Workers' Compensation | Michigan Statutory minimum |
| b.  Employers' Liability | $500,000.00 minimum each disease<br>$500,000.00 minimum each person<br>$500,000.00 minimum each accident |
| c.  Commercial General Liability Insurance (Broad Form Comprehensive) | $1,000,000.00 each occurrence<br>$2,000,000.00 aggregate |
| d.  Garage Keeper's Legal Liability Insurance | $50,000.00 |
| e.  Automobile Liability Insurance (covering all owned, hired and non-owned vehicles with personal and property protection insurance, including residual liability insurance under Michigan no fault insurance law) | $1,000,000.00 combined single limit for bodily injury and property damage |

DocuSign Envelope ID: 4154BF89-11C6-46A6-ABD9-8673C7288B8F
DocuSign Envelope ID: 6A20C78B-8091-4695-B8D5-B509ECAC5FA2

10.02    The commercial general liability insurance policy shall include an endorsement naming the "City of Detroit" as an additional insured. The additional insured endorsement shall provide coverage to the additional insured with respect to liability arising out of the named insured's ongoing work or operations performed for the additional insured under the terms of this Contract. The commercial general liability policy shall state that the Contractor's insurance is primary and not excess over any insurance already carried by the City of Detroit and shall provide blanket contractual liability insurance for all written contracts.

10.03    Each such policy shall contain the following cross-liability wording: "In the event of a claim being made hereunder by one insured for which another insured is or may be liable, then this policy shall cover such insured against whom a claim is or may be made in the same manner as if separate policies had been issued to each insured hereunder."

10.04    All insurance required by this Contract shall be written on an occurrence-based policy form, if the same is commercially available.

10.05    The Commercial General Liability policy shall be endorsed to have the general aggregate apply to the Services provided under this Contract only.

10.06    If during the term of this Contract changed conditions or other pertinent factors should, in the reasonable judgment of the City, render inadequate the insurance limits, the Contractor shall furnish on demand such additional coverage or types of coverage as may reasonably be required under the circumstances. All such insurance shall be effected at the Contractor's expense, under valid and enforceable policies, issued by insurers licensed to conduct business in Michigan and are otherwise acceptable to the City.

10.07    All insurance policies shall name the Contractor as the insured. Certificates of insurance evidencing the coverage required by this Article 10 shall, in a form acceptable to the City, be submitted to the City prior to the commencement of the Services and at least fifteen (15) days prior to the expiration dates of expiring policies. In the event the Contractor receives notice of policy cancellation, the Contractor shall immediately notify the City in writing.

10.08    If any work is subcontracted in connection with this Contract, the Contractor shall require each Subcontractor to effect and maintain the types and limits of insurance set forth in this Article 10 and shall require documentation of same, copies of which documentation shall be promptly furnished the City.

10.09    The Contractor shall be responsible for payment of all deductibles contained in any insurance required under this Contract. The provisions requiring the Contractor to carry the insurance required under this Article 10 shall not be construed in any manner as waiving or restricting the liability of the Contractor under this Contract.

## Article 11: Default and Termination

11.01   This Contract shall remain in full force and effect until the end of its term unless otherwise terminated for cause or convenience according to the provisions of this Article 11.

11.02   The City reserves the right to terminate this Contract for cause.  Cause is an event of default.

   a)   An event of default shall occur if there is a material breach of this Contract, and shall include the following:

   1)   The Contractor fails to begin work in accordance with the terms of this Contract; or

   2)   The Contractor, in the judgment of the City, is unnecessarily, unreasonably, or willfully delaying the performance and completion of the Work Product or Services; or

   3)   The Contractor ceases to perform under the Contract; or

   4)   The City is of the opinion that the Services cannot be completed within the time provided and that the delay is attributable to conditions within the Contractor's control; or

   5)   The Contractor, without just cause, reduces its work force on this Contract to a number that would be insufficient, in the judgment of the City, to complete the Services within a reasonable time, and the Contractor fails to sufficiently increase such work force when directed to do so by the City; or

   6)   The Contractor assigns, transfers, conveys or otherwise disposes of this Contract in whole or in part without prior approval of the City; or

   7)   Any City officer or employee acquires an interest in this Contract so as to create a conflict of interest; or

   8)   The Contractor violates any of the provisions of this Contract, or disregards applicable laws, ordinances, permits, licenses, instructions or orders of the City; or

   9)   The performance of the Contract, in the sole judgment of the City, is substandard, unprofessional, or faulty and not adequate to the demands of the task to be performed; or

   10)  The Contractor fails in any of the agreements set forth in this Contract; or

   11)  The Contractor ceases to conduct business in the normal course; or

   12)  The Contractor admits its inability to pay its debts generally as they become due.

   b)   If the City finds an event of default has occurred, the City may issue a Notice of Termination for Cause setting forth the grounds for terminating the Contract.  Upon receiving a Notice of Termination for Cause, the Contractor shall have ten (10) calendar days within which to cure such default.  If the default is cured within said ten (10) day period, the right of termination

Page **12** of **49**

for such default shall cease. If the default is not cured to the satisfaction of the City, this Contract shall terminate on the tenth calendar day after the Contractor's receipt of the Notice of Termination for Cause, unless the City, in writing, gives the Contractor additional time to cure the default. If the default is not cured to the satisfaction of the City within the additional time allowed for cure, this Contract shall terminate for cause at the end of the extended cure period.

c)  If, after issuing a Notice of Termination for Cause, the City determines that the Contractor was not in default, the rights and obligations of the parties shall be the same as if the Notice of Termination had been issued as a Notice of Termination for Convenience. Alternatively, in the City's discretion, the Notice of Termination for Cause may be withdrawn and the Contract, if terminated, may be reinstated.

d)  The Contractor shall be liable to the City for any damages it sustains by virtue of the Contractor's breach or any reasonable costs the City might incur in enforcing or attempting to enforce this Contract. Such costs shall include reasonable fees and expenses for attorneys, expert witnesses and other consultants. However, if the Contractor makes a written offer prior to the initiation of litigation or arbitration, then the City shall not be entitled to such attorney fees unless the City declines the offer and obtains a verdict or judgment for an amount more than ten percent (10%) above the amount of the Contractor's last written offer prior to the initiation of litigation or arbitration. The City may withhold any payment(s) to the Contractor, in an amount not to exceed the amount claimed in good faith by the City to represent its damages, for the purpose of setoff until such time as the exact amount of damages due to the City from the Contractor is determined. It is expressly understood that the Contractor shall remain liable for any damages the City sustains in excess of any setoff.

e)  The City's remedies outlined in this Article 11 shall be in addition to any and all other legal or equitable remedies permissible.

11.03   The City shall have the right to terminate this Contract at any time at its convenience by giving the Contractor five (5) business days written Notice of Termination for Convenience. As of the effective date of the termination, the City will be obligated to pay the Contractor the following: (a) the fees or commissions for Services completed and accepted in accordance with Exhibit A in the amounts provided for in Exhibit B; (b) the fees for Services performed but not completed prior to the date of termination in accordance with Exhibit A in the amounts set forth in the Contractor's rate schedule as provided in Exhibit B; and (c) the Contractor's costs and expenses incurred prior to the date of the termination for items that are identified in Exhibit B. The amount due to the Contractor shall be reduced by payments already paid to the Contractor by the City. In no event shall the City pay the Contractor more than maximum price, if one is stated, of this Contract.

11.04   After receiving a Notice of Termination for Cause or Convenience, and except as otherwise directed by the City, the Contractor shall:

a)  Stop work under the Contract on the date and to the extent specified in the Notice of Termination;

    b)   Obligate no additional Contract funds for payroll costs and other costs beyond such date as the City shall specify, and place no further orders on subcontracts for material, services, or facilities, except as may be necessary for completion of such portion of the Services under this Contract as is not terminated;

    c)   Terminate all orders and subcontracts to the extent that they relate to the portion of the Services terminated pursuant to the Notice of Termination;

    d)   Preserve all Records and submit to the City such Records and reports as the City shall specify, and furnish to the City an inventory of all furnishings, equipment, and other property purchased for the Contract, if any, and carry out such directives as the City may issue concerning the safeguarding or disposition of files and property; and

    e)   Submit within thirty (30) days a final report of receipts and expenditures of funds relating to this Contract, and a list of all creditors, Subcontractors, lessors and other parties, if any, to whom the Contractor has become financially obligated pursuant to this Contract.

11.05   After termination of the Contract, each party shall have the duty to assist the other party in the orderly termination of this Contract and the transfer of all rights and duties arising under the Contract, as may be necessary for the orderly, un-disrupted continuation of the business of each party.

## Article 12: Assignment

12.01   The Contractor shall not assign, transfer, convey or otherwise dispose of any interest whatsoever in this Contract without the prior written consent of the City; however, claims for money due or to become due to the Contractor may be assigned to a financial institution without such approval. Notice of any assignment to a financial institution or transfer of such claims of money due or to become due shall be furnished promptly to the City. If the Contractor assigns all or any part of any monies due or to become due under this Contract, the instrument of assignment shall contain a clause stating that the right of the assignee to any monies due or to become due shall be subject to prior liens of all persons, firms, and corporations for Services rendered or materials supplied for the performance of the Services called for in this Contract.

## Article 13: Subcontracting

13.01   None of the Services covered by this Contract shall be subcontracted without the prior written approval of the City and, if required, any grantor agency. The City reserves the right to withhold approval of subcontracting such portions of the Services where the City determines that such subcontracting is not in the City's best interests.

13.02   Each subcontract entered into shall provide that the provisions of this Contract shall apply to the Subcontractor and its Associates in all respects. The Contractor agrees to bind each Subcontractor and each Subcontractor shall agree to be bound by the terms of the Contract insofar as applicable to the work or services performed by that Subcontractor.

13.03   The Contractor and the Subcontractor jointly and severally agree that no approval by the City of any proposed Subcontractor, nor any subcontract, nor anything in the Contract, shall create or be

Page **14** of **49**

deemed to create any rights in favor of a Subcontractor and against the City, nor shall it be deemed or construed to impose upon the City any obligation, liability or duty to a Subcontractor, or to create any contractual relation whatsoever between a Subcontractor and the City.

13.04    The provisions contained in this Article 13 shall apply to subcontracting by a Subcontractor of any portion of the work or services included in an approved subcontract.

13.05    The Contractor agrees to indemnify, defend, and hold the City harmless against any claims initiated against the City pursuant to any subcontracts the Contractor enters into in performance of this Contract. The City's approval of any Subcontractor shall not relieve the Contractor of any of its responsibilities, duties and liabilities under this Contract. The Contractor shall be solely responsible to the City for the acts or defaults of its Subcontractors and of each Subcontractor's Associates, each of whom shall for this purpose be deemed to be the agent or employee of the Contractor.

### Article 14: Conflict of Interest

14.01    The Contractor covenants that it presently has no interest and shall not acquire any interest, direct or indirect, that would conflict in any manner or degree with the performance of the Services under this Contract. The Contractor further covenants that in the performance of this Contract no person having any such interest shall be employed by it.

14.02    The Contractor further covenants that no officer, agent, or employee of the City and no other public official who exercises any functions or responsibilities in the review or approval of the undertaking or performance of this Contract has any personal or financial interest, direct or indirect, in this Contract or in its proceeds, whether such interest arises by way of a corporate entity, partnership, or otherwise.

14.03    The Contractor warrants (a) that it has not employed and will not employ any person to solicit or secure this Contract upon any agreement or arrangement for payment of a commission, percentage, brokerage fee, or contingent fee, other than bona fide employees working solely for the Contractor either directly or indirectly, and (b) that if this warranty is breached, the City may, at its option, terminate this Contract without penalty, liability or obligation, or may, at its option, deduct from any amounts owed to the Contractor under this Contract any portion of any such commission, percentage, brokerage, or contingent fee.

14.04    The Contractor covenants not to employ an employee of the City for a period of one (1) year after the date of termination of this Contract without written City approval.

14.05    The Contractor shall promptly identify and inform the City in writing of any potential conflict of interest ( as set forth in Sections 14.01 through 14.04 above) or any relationship or actions that might give the appearance that a conflict of interest ( as set forth in Sections 14.01 through 14.04 above) exists, or that a situation exists that could reasonably be viewed as affecting the Contractor's objectivity in performing work under this contract, including the performance of administrative or other duties to related organizations.

14.06     The Contractor shall provide a statement listing all political contributions and expenditures ("Statement of Political Contributions and Expenditures"), as defined by the Michigan Campaign Finance Act, MCL 169.201, et seq., made by the Contractor, its affiliates, subsidiaries, principals, officers, owners, directors, agents or assigns, to elective City officials within the previous four (4) years. Individuals shall also list any contributions or expenditures from their spouses.

14.07     The Contractor's Statement of Political Contributions and Expenditures shall be attached to this Contract as "Exhibit C" and made a part hereof. **This Contract is not valid unless and until the Statement of Political Contributions and Expenditures is provided.**

14.08     The Statement of Political Contributions and Expenditures shall be filed by the Contractor on an annual basis for the duration of the Contract, shall be current up to and including the date of its filing, and shall also be filed with all contract renewals and change orders, if any.

### Article 15: Confidential Information

15.01     In order that the Contractor may effectively fulfill its covenants and obligations under this Contract, it may be necessary or desirable for the City to disclose confidential and proprietary information to the Contractor or its Associates pertaining to the City's past, present and future activities. Since it is difficult to separate confidential and proprietary information from that which is not, the Contractor shall regard, and shall instruct its Associates to regard, all information gained as confidential and such information shall not be disclosed to any organization or individual without the prior consent of the City. The above obligation shall not apply to information already in the public domain or information required to be disclosed by a court order.

15.02     The Contractor agrees to take appropriate action with respect to its Associates to ensure that the foregoing obligations of non-use and non-disclosure of confidential information shall be fully satisfied.

### Article 16: Compliance with Laws

16.01     The Contractor shall comply with and shall require its Associates to comply with all applicable federal, state and local laws.

16.02     The Contractor shall hold the City harmless with respect to any damages arising from any violation of law by it or its Associates. The Contractor shall commit no trespass on any public or private property in performing any of the Services encompassed by this Contract. The Contractor shall require as part of any subcontract that the Subcontractor comply with all applicable laws and regulations.

### Article 17: Office of Inspector General

17.01.     In accordance with Section 2-106.6 of the City Charter, this Contract shall be voidable or rescindable at the discretion of the Mayor or Inspector General at any time if a Public Servant who is a party to the Contract has an interest in the Contract and fails to disclose such interest.

17.02.  This Contract shall also be voidable or rescindable if a lobbyist or employee of the contracting party offers a prohibited gift, gratuity, honoraria or payment to a Public Servant in relation to the Contract.

17.03.  A fine shall be assessed to the Contractor in the event of a violation of Section 2-106.6 of the City Charter. If applicable, the actions of the Contractor, and its representative lobbyist or employee, shall be referred to the appropriate prosecuting authorities.

17.04.  Pursuant to Section 7.5-306 of the City Charter, the Inspector General shall investigate any Public Servant, City agency, program or official act, contractor and subcontractor providing goods and services to the City, business entity seeking contracts or certification of eligibility for City contracts and person seeking certification of eligibility for participation in any City program, either in response to a complaint or on the Inspector General's own initiative in order to detect and prevent waste, abuse, fraud and corruption.

17.05.  In accordance with Section 7.5-310 of the City Charter, it shall be the duty of every Public Servant, contractor, subcontractor, and licensee of the City, and every applicant for certification of eligibility for a City contract or program, to cooperate with the Inspector General in any investigation pursuant to Article 7.5, Chapter 3 of the City Charter.

17.06.  Any Public Servant who willfully and without justification or excuse obstructs an investigation of the Inspector General by withholding documents or testimony, is subject to forfeiture of office, discipline, debarment or any other applicable penalty.

17.07.  As set forth in Section 7.5-308 of the City Charter, the Inspector General has a duty to report illegal acts. If the Inspector General has probable cause to believe that any Public Servant or any person doing or seeking to do business with the City has committed or is committing an illegal act, then the Inspector General shall promptly refer the matter to the appropriate prosecuting authorities.

17.08.  In accordance with Section 17-5-351(a) of the Detroit City Code, the City shall solicit offers from, award contracts to, consent to subcontracts with, or otherwise to conduct business with, responsible contractors only. To effectuate this policy, the debarment of contractors and subcontractors from current and/or future City work may be undertaken.

17.09.  Therefore, it will be the responsibility of all Contractors to check the list of debarred contractors in the City's website and confirm that neither the Contractor nor the subcontracting company is listed on the City's debarment list and they will not be using the debarred (sub) contractor(s) to conduct any City business.

17.10   In accordance with Section 17-5-352 (c) of the Detroit City Code, the Contractor shall report to the Office of Inspector General any improper, unethical or illegal activity or requests made by elected officers of the City, including those acting on their behalf, or any Public Servant in connection with this Contract.

## Article 18: Amendments

18.01   The City may consider it in its best interest to change, modify or extend a covenant, term or condition of this Contract or require the Contractor to perform Additional Services that are not contained within the Scope of Services as set forth in Exhibit A.  Any such change, addition, deletion, extension or modification of Services may require that the compensation paid to the Contractor by the City be proportionately adjusted, either increased or decreased, to reflect such modification.  If the City and the Contractor mutually agree to any changes or modification of this Contract, the modification shall be incorporated into this Contract by written Amendment.

18.02   Compensation shall not be modified unless there is a corresponding modification in the Services sufficient to justify such an adjustment.  If there is any dispute as to compensation, the Contractor shall continue to perform the Services under this Contract until the dispute is resolved.

18.03   No Amendment to this Contract shall be effective and binding upon the parties unless it expressly makes reference to this Contract, is in writing, is signed and acknowledged by duly authorized representatives of both parties, is approved by the appropriate City departments and the City Council, and is signed by the Chief Procurement Officer.

18.04   The City shall not be bound by Unauthorized Acts of its employees, agents, or representatives with regard to any dealings with the Contractor and any of its Associates.

## Article 19: Fair Employment Practices

19.01   The Contractor shall comply with, and shall require any Subcontractor to comply with, all federal, state and local laws governing fair employment practices and equal employment opportunities.

19.02   The Contractor agrees that it shall, at the point in time it solicits any subcontract, notify the potential Subcontractor of their joint obligations relative to non-discrimination under this Contract, and shall include the provisions of this Article 19 in any subcontract, as well as provide the City a copy of any subcontract upon request.

19.03   Breach of the terms and conditions of this Article 19 shall constitute a material breach of this Contract and may be governed by the provisions of Article 11, "Default and Termination."

## Article 20: Notices

20.01   All notices, consents, approvals, requests and other communications ("Notices") required or permitted under this Contract shall be given in writing, mailed by postage prepaid, certified or registered first-class mail, return receipt requested, and addressed as follows:

*If to the Police Department on behalf of the City:*

City of Detroit Police Department
11631 Mt. Elliot Ct
Detroit, Michigan 48212
Attention: Captain Brandon Lewis

Page **18** of **49**

DocuSign Envelope ID: 4154BF88-11C6-46A6-ABD9-8673C7288B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC5FA2

*If to the Contractor:*

Troy's Towing, Inc.
9615 Grinnell Street
Detroit, Michigan 48213
Attention: <u>Mr. Troy Ginyard</u>

20.02    All Notices shall be deemed given on the day of mailing. Either party to this Contract may change its address for the receipt of Notices at any time by giving notice of the address change to the other party. Any Notice given by a party to this Contract must be signed by an authorized representative of such party.

20.03    The Contractor agrees that service of process at the address and in the manner specified in this Article 20 shall be sufficient to put the Contractor on notice of such action and waives any and all claims relative to such notice.

### Article 21: Proprietary Rights and Indemnity

21.01    The Contractor shall not relinquish any proprietary rights in its intellectual property (copyright, patent, and trademark), trade secrets or confidential information as a result of the Services provided under this Contract. Any Work Product provided to the City under this Contract shall not include the Contractor's proprietary rights, except to the extent licensed to the City.

21.02    The City shall not relinquish any of its proprietary rights, including, but not limited to, its data, privileged or confidential information, or methods and procedures, as a result of the Services provided under this Contract.

21.03    The parties acknowledge that should the performance of this Contract result in the development of new proprietary and secret concepts, methods, techniques, processes, adaptations, discoveries, improvements and ideas ("Discoveries"), and to the extent said Discoveries do not include modifications, enhancements, configurations, translations, derivative works, and interfaces from the Contractor's intellectual property, trade secrets or confidential information, said Discoveries shall be deemed "Work(s) for Hire" and shall be promptly reported to the City and shall belong solely and exclusively to the City without regard to their origin, and the Contractor shall not, other than in the performance of this Contract, make use of or disclose said Discoveries to anyone. At the City's request, the Contractor shall execute all documents and papers and shall furnish all reasonable assistance requested in order to establish in the City all right, title and interest in said Discoveries or to enable the City to apply for United States patents or copyrights for said Discoveries, if the City elects to do so.

21.04    Any Work Product provided by the Contractor to the City under this Contract shall not be disclosed, published, copyrighted or patented, in whole or in part, by the Contractor. The right to the copyright or patent in such Work Product shall rest exclusively in the City. Further, the City shall have unrestricted and exclusive authority to publish, disclose, distribute and otherwise use, in whole or in part, any of the Work Product. If Work Product is prepared for publication, it shall carry the following notation on the front cover or title page: "This document was prepared for, and is the exclusive property of, the City of Detroit, Michigan, a municipal corporation."

21.05    The Contractor warrants that the performance of this Contract shall not infringe upon or violate any patent, copyright, trademark, trade secret or proprietary right of any third party. In the event of any legal action related to the above obligations of the Contractor filed by a third party against the City, the Contractor shall, at its sole expense, indemnify, defend and hold the City harmless against any loss, cost, expense or liability arising out of such claim, whether or not such claim is successful.

21.06    The making of payments, including partial payments by the City to the Contractor, shall vest in the City title to, and the right to take possession of, all Work Product produced by the Contractor up to the time of such payments, and the City shall have the right to use said Work Product for public purposes without further compensation to the Contractor or to any other person.

21.07    Upon the completion or other termination of this Contract, all finished or unfinished Work Product prepared by the Contractor shall, at the option of the City, become the City's sole and exclusive property whether or not in the Contractor's possession. Such Work Product shall be free from any claim or retention of rights on the part of the Contractor and shall promptly be delivered to the City upon the City's request. The City shall return all of the Contractor's property to it. The Contractor acknowledges that any intentional failure or unreasonable delay on its part to deliver the Work Product to the City will cause irreparable harm to the City not adequately compensable in damages and for which the City has no adequate remedy at law. The Contractor accordingly agrees that the City may in such event seek and obtain injunctive relief in a court of competent jurisdiction to compel delivery of the Work Product, to which injunctive relief the Contractor consents, as well as seek and obtain all applicable damages and costs. The City shall have full and unrestricted use of the Work Product for the purpose of completing the Services.

### Article 22: Force Majeure

22.01    No failure or delay in performance of this Contract, by either party, shall be deemed to be a breach thereof when such failure or delay is caused by an event or circumstance that is beyond the reasonable control of that party, absent such party's fault or negligence, and which by its nature could not have been foreseen by such party, or, if it could have been foreseen, was unavoidable ("Force Majeure Event"). A Force Majeure Event includes, but is not limited to, any Act of God or the public enemy, strikes, lockouts, wars, acts of domestic or international terrorism, riots, epidemics, pandemics, explosions, sabotage, the binding order of any governmental authority, or any other cause, whether the kind herein enumerated or otherwise, which is not within the control of a party. Contractor's economic hardship and changes in the market conditions are not considered a Force Majeure Event. In the event of a dispute between the parties with regard to what constitutes a Force Majeure Event, the City's reasonable determination shall be controlling.

22.02    Upon the occurrence of a Force Majeure Event, Contractor shall (i) give prompt written notice to (1) the City and (2) the City's Office of Contracting and Procurement that the Force Majeure Event has occurred, the anticipated effect on Contractor's performance, and its expected duration; (ii) use all diligent efforts to end the failure or delay of its performance, ensure that the effects of any Force Majeure Event are minimalized, (iii) keep the City apprised of Contractor's progress in remediating the effects of the Force Majeure Event; and (iii) promptly resume performance under the Contract.

22.03   If a Force Majeure Event prevents Contractor from performing under the Contract for a continuous period of at least ten (10) business days, the City may terminate this Contract immediately by giving written notice to Contractor as required under the Contract.

### Article 23: Waiver

23.01   The City shall not be deemed to have waived any of its rights under this Contract unless such waiver is in writing and signed by the City.

23.02   No delay or omission on the part of the City in exercising any right shall operate as a waiver of such right or any other right. A waiver on any one (1) occasion shall not be construed as a waiver of any right on any future occasion.

23.03   No failure by the City to insist upon the strict performance of any covenant, agreement, term or condition of this Contract or to exercise any right, term or remedy consequent upon its breach shall constitute a waiver of such covenant, agreement, term, condition, or breach.

### Article 24: Miscellaneous

24.01   If this contract is grant funded, this contract is governed by the terms and conditions of the grant agreement. See the full terms and conditions of the grant are included with this contract.

24.02   If any provision of this Contract or its application to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Contract shall not be affected and shall remain valid and enforceable to the fullest extent permitted by law.

24.03   This Contract contains the entire agreement between the parties and all prior negotiations and agreements are merged into this Contract. Neither the City nor the City's agents have made any representations except those expressly set forth in this Contract, and no rights or remedies are, or shall be, acquired by the Contractor by implication or otherwise unless expressly set forth in this Contract. The Contractor waives any defense it may have to the validity of the execution of this Contract.

24.04   Unless the context otherwise expressly requires, the words "herein," "hereof," and "hereunder," and other words of similar import, refer to this Contract as a whole and not to any particular section or subdivision.

24.05   The headings of the sections of this Contract are for convenience only and shall not be used to construe or interpret the scope or intent of this Contract or in any way affect the same.

24.06   This Contract and all actions arising under it shall be governed by, subject to, and construed according to the law of the State of Michigan. The Contractor agrees, consents and submits to the exclusive personal jurisdiction of any state or federal court of competent jurisdiction in Wayne County, Michigan, for any action arising out of this Contract. The Contractor also agrees that it shall not commence any action against the City because of any matter whatsoever arising out of or relating to the validity, construction, interpretation and enforcement of this Contract in any state or federal court of competent jurisdiction other than one in Wayne County, Michigan.

Page **21** of **49**

24.07   If any Associate of the Contractor shall take any action that, if done by a party, would constitute a breach of this Contract, the same shall be deemed a breach by the Contractor.

24.08   The rights and remedies set forth in this Contract are not exclusive and are in addition to any of the rights or remedies provided by law or equity.

24.09   For purpose of the hold harmless and indemnity provisions contained in this Contract, the term "City" shall be deemed to include the City of Detroit and all other associated, affiliated, allied or subsidiary entities or commissions, now existing or subsequently created, and their officers, agents, representatives, and employees.

24.10   The Contractor covenants that it is not, and shall not become, in arrears to the City upon any contract, debt, or other obligation to the City including, without limitation, real property, personal property and income taxes, and water, sewage or other utility bills.

24.11   This Contract may be executed in any number of originals, any one of which shall be deemed an accurate representation of this Contract.  Promptly after the execution of this Contract, the City shall provide a copy to the Contractor.

24.12   As used in this Contract, the singular shall include the plural, the plural shall include the singular, and a reference to either gender shall be applicable to both.

24.13   The rights and benefits under this Contract shall inure to the City of Detroit and its agents, successors, and assigns.

24.14   The City shall have the right to recover by setoff from any payment owed to the Contractor all delinquent withholding, income, corporate and property taxes owed to the City by the Contractor, any amounts owed to the City by the Contractor under this Contract or other contracts, and any other debt owed to the City by the Contractor.

### Article 25: Invoice Submission and Payment

25.01   All invoices submitted against the contract must include part or item numbers and part or item description, list price, and applicable discount. Items not properly invoiced will not be paid. It is the Supplier's responsibility to ensure the creation of invoice(s) in Oracle Cloud. Invoices must meet the following conditions for payment: Price on invoice must correspond to the pricing listed on purchase order and/or contract.

25.02   Supplier must submit price lists in accordance with bid requirements.

25.03   All suppliers **must** register in the Supplier Portal and be set up for ACH (wireless payment) in order to receive payment.

25.04   Supplier registration and invoice submission instructions can be found on the City of Detroit's website at http://www.detroitmi.gov/Supplier. Questions should be directed to procure-mentinthecloud@detroitmi.gov.

DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

**Article 26: Board of Ethics**

26.01   In accordance with Section 2-106.10 of the City Charter, it is the duty of every Public Servant, the Contractor and subcontractors, if any, to cooperate with the Board of Ethics in any investigation.

26.02   Any Public Servant who willfully and without justification or excuse obstructs an investigation of the Board of Ethics by withholding documents or testimony is subject to forfeiture of officer, discipline, debarment or any other applicable penalty.

26.03   The Contractor acknowledges that it subject to debarment or any other applicable penalty, if the Contractor willfully and without justification or excuse obstructs an investigation of the Board of Ethics by withholding documents or testimony.

(Signatures appear on next page)

## Signature Page

The City and the Contractor, by and through their duly authorized officers and representatives, have executed this Contract as follows:

City of Detroit,
Police Department

By: _____

                Name

_____

                Title

Contractor:
Troy's Towing, Inc.

By: _____  Troy Ginyard

                Name

President

_____

                Title

THIS CONTRACT WAS APPROVED
BY THE CITY COUNCIL ON:

12/12/2022
_____
                Date

THIS CONTRACT WAS APPROVED
BY FRC ON:
  (if FRC approval is not required, leave blank)

_____
                Date

APPROVED BY LAW DEPARTMENT
PURSUANT TO § 7.5-206 OF THE CHARTER
OF THE CITY OF DETROIT

DocuSigned by:

1/6/2023
_____
Chief Procurement Officer      Date

8/1/2022
_____
    Corporation Counsel      Date

**THIS CONTRACT IS NOT VALID OR AUTHORIZED UNTIL APPROVED BY RESOLU-
TION OF THE CITY COUNCIL AND SIGNED BY THE CHIEF PROCUREMENT OFFICER.**

DocuSign Envelope ID: 4154BF88-11C6-46A6-ABD6-8673C7288B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

# EXHIBIT A: SCOPE OF SERVICES

### I. **Notice to Proceed**

The term of this Contract shall begin upon City Council approval and, unless sooner terminated, shall terminate on July, 2027. The Contractor shall commence performance of this Contract upon receipt of a written "Notice to Proceed" from the City and in the manner specified in the Notice to Proceed.

### II. **Services to be Performed**

**Project Description**: The Contractor (also referred to as "police authorized tower"; "tower"; or "tow company") shall provide police authorized towing and recovery services for the Detroit Police Department ("DPD" or "the Department"). This includes, but is not limited to, the removal of motor vehicles, motorcycles, mopeds, boats, recreational vehicles, safes, ATM machines, and other items as determined by the City, to a place of safekeeping. The Contractor shall tow and, where authorized, store vehicles at its tow lot. To the extent that the Contractor has proposed to only tow vehicles, the storage provisions of this Scope of Services shall not apply. If the Contractor should at a later date seek to only tow, but not store vehicles, the Contractor shall seek and obtain DPD's prior written approval.

### A. Project Objective

The City of Detroit is responsible for maintaining clean, safe, and functional streets. Citizens are entitled to a well-managed vehicle towing system that affords them a high level of customer service, convenience, courtesy, and professionalism. Accordingly, this to provide police authorized towing services for the DPD.

### B. Project Requirements

### 1. **Rotational Towing System**

The Police Towing and Impound Unit shall serve as the Department's primary towing service.[1] When DPD Towing is not available, private towers shall be utilized in a manner consistent with the following Requirements and in accordance with the provisions of this Contract and local, state, and federal laws.

Police authorized towing companies shall be dispatched to scenes where towing services are required[2] on a rotational basis according to the following Requirements:

---

[1] Absent change of circumstances, the Department will deploy its tow trucks in such manner and subject to the same conditions, reservations, and discretions as set forth in the former Chief of Police James E. Craig's letter to the Detroit City Council, dated May 4, 2020.

[2] The Department will only dispatch one towing company to each scene where towing services are required. It shall be the responsibility of the tow company to respond with sufficient equipment to address the towing and recovery needs of the DPD.

DocuSign Envelope ID: 4154BF88-11C6-46A6-ARD9-8673C7288B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

### a. General Tows

To the extent feasible, each authorized tower will tow on a rotational basis within the precinct in which they are located. Precincts lacking adequate authorized tow companies to cover their respective areas shall have towers assigned on the basis of their geographical distance to the actual precinct station. To the extent Contractor believes there has been a violation of the rotational system, or that the Contractor has not received certain tows to which the Contractor is entitled, the Contractor shall immediately report such violation to the DPD. DPD shall take such action as it deems appropriate in its discretion. Contractor hereby waives and releases any claim against DPD, the City, or any of their agents or employees, seeking money damages for the Contractor's failure to receive tows or for any violation of the rotational system.

### b. Evidence Tows

The Department shall maintain a separate rotation for the towing of evidence vehicles. Vehicles towed as evidence must be conveyed to 11631 Mt. Elliott Ct. or to another site as designated by the DPD. The tow company shall be compensated according to the City's authorized towing rates. The rotation for evidence tows shall be constructed according to the same standards set forth in these Requirements. However, tow companies may be temporarily removed from the towing rotation in the event the money on the company's contract is depleted or the contract expires or otherwise is terminated.

### c. Forfeiture Tows

The Department shall maintain a separate rotation for the towing of forfeiture vehicles. Vehicles towed for forfeiture must be conveyed to 9425 Grinnell or to another site as designated by the DPD. The tow company shall be compensated according to the City's authorized towing rates. The rotation for forfeiture tows shall be constructed according to the same standards set forth in these Requirements. However, tow companies may be temporarily removed from the towing rotation in the event the money on the company's contract is depleted or the contract expires or otherwise is terminated.

### d. Heavy Duty Tows

The Department shall maintain a separate rotation for the towing of vehicles weighing 10,000 lbs. or more and where removal of the vehicle requires a heavy duty tow truck. The heavy duty tow rotation shall be purely rotational and not based on geographic area.

### e. Detail Tows

Details include any instance where a tow truck will be required to be on scene or on standby and a minimum of three (3) vehicles will be towed. This includes raids, blitzes, events, or other special deployment activities. The command requesting the Detail Tow will file the appropriate request with the appropriate DPD entity. A rotation specific to the detail will then be constructed. The tow company will be notified and the control number given directly to the tow company. A supervisor assigned to the detail is responsible for ensuring proper administration of the detail.

DocuSign Envelope ID: 4154BF88-11C6-46A6-ABD8-8673C7288B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

### f. Other Assignments

The Department may require an authorized tower to keep one (1) or more tow trucks on standby in the downtown area or other location for an extended period of time. Tow companies will be assigned to cover such details for a one (1) week period on a rotational basis. In the event the tow truck is needed for a detail under this provision, the company assigned to cover the week will be notified and must supply the requested coverage.

### g. Tow Response Time

Tow companies shall respond with the appropriate equipment to the designated point of tow within 20 minutes of dispatch. A tow company providing heavy duty services shall respond within 35 minutes of the request for heavy duty towing services.

Towers shall be responsible for tracking their response times and shall notify the DPD Tow Monitor in writing of every instance in which the tower failed to respond within the required timeframe. The notification shall include the reason for the delay and the corrective action taken.

### h. Cancellation Protocols

The DPD shall promptly cancel a tower once information is received that the tow is no longer needed. In such circumstances, the tower shall be placed at the top of the rotation and shall receive the next towing opportunity.

Towers that are cancelled for excessive response time shall be placed back into the rotation in the same manner as if they had handled the tow.

The tow company shall notify the DPD Tow Monitor in writing each time a tow is cancelled so that the DPD Tow Monitor may follow up to ensure the rotation was appropriately updated. The notification must be sent within 24 hours of the event and include the date / time of the tow and the cancellation. Tow companies that fail to make this notification may be subject to discipline, including, but not limited to, forfeiture of any tow opportunity it may have been entitled to had the rotation been appropriately updated.

### i. Unfulfilled Towing Assignments

Towing assignments that cannot be fulfilled by the Contractor originally called must be referred back to the DPD Dispatch Center for reassignment and may not be reassigned by the Contractor. In the event such an occurrence takes place, the Contractor shall notify the DPD Tow Monitor in writing within 24 hours of the occurrence. The notification shall include the date / time of the call for service, the reason the assignment could not be fulfilled, and any corrective action by the tow company to ensure such an occurrence does not again take place. In his / her discretion, the DPD Tow Monitor may impose a summary suspension of up to one week for each occurrence. The DPD Tow Monitor shall notify the DPD and the Board of Police Commissioners each time such a suspension is imposed.

DocuSign Envelope ID: 4154BF88-11C6-46A6-ABD9-8673C7288B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

## 2.  Additional Requirements for Police Authorized Towers

### a. Agreement to the Requirements for Police Authorized Towers

Contractor and all police authorized towers are bound by these Requirements. All towers must immediately report any apparent violations of these Requirements to the DPD Tow Monitor. Such notifications must be sent by e-mail to the DPD Tow Monitor.
The DPD Tow Monitor shall conduct a Tower Orientation Session, which will include an overview of the requirements mandated by the Department. All police authorized towers must attend this orientation session.

### b. General Requirements

In addition to any other requirements set forth in these Requirements, all tow companies must agree to operate in accordance with the highest industry standards and practices. All tow companies shall remain available to respond to calls for service as set forth in these Requirements 24 hours a day, seven days a week. All selected tow companies must accommodate special tow programs and City-sponsored events.

Police authorized towers shall remain open for the release of vehicles from 7:00 a.m. – 10:00 p.m., Monday-Saturday. In the event the hours of operation of DPD tow lots are reduced, the hours during which police authorized towers must remain open for the release of vehicles shall be reduced to the same extent. Under no circumstances shall a police authorized tower be required to remain open for the release of vehicles beyond those hours required for DPD tow lots. It is the express intent of this provision to ensure that citizens have the same degree of access to their vehicles regardless of whether the vehicle is stored on a private tower's lot or a DPD tow lot.

Tow companies must conduct themselves in a professional manner at all times and may not cause the public unreasonable delay either on the phone or in person.

### c. Adherence to the DPD's Tow Rotations

All police authorized towers have an obligation to help ensure the integrity of the DPD's rotational towing system. No vehicles shall be towed, nor any services rendered, without authorization from the DPD's dispatching center. Tow companies must take reasonable measures toward ensuring that the individual requesting towing and recovery services is acting on behalf of the DPD's Dispatch Center.

In the event a tow company is contacted by someone other than the DPD's dispatching center, the tow company shall refer the requesting member to the DPD's dispatch center and notify the DPD Tow Monitor as soon as possible in writing.

### d. Requirement to Report the Misconduct of DPD Members

When the Contractor receives information that a DPD member has engaged or is engaging in misconduct, the Contractor shall notify the DPD Tow Monitor as soon as possible in writing.

In addition, tow companies are obligated to report fraudulent or unethical conduct to the City's Inspector General.

DocuSign Envelope ID: 4154BE89-11C6-46A6-ABD9-8673C7289B8F

Case 2:23-cv-13182-LJM-DRG   ECF No. 1-11, PageID.511   Filed 12/13/23   Page 34 of 54
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

*e. Capacity*

All police authorized towers must have sufficient facilities, equipment, and personnel to perform any tow-ing and recovery service requested by the DPD. All tow companies must have the capacity to respond to the scene where services are being requested with the appropriate equipment within 20 minutes of the time of the dispatch.

In the event a job is declined due to a lack of adequate space, equipment, or personnel, the DPD Tow Monitor may in his / her discretion suspend the police authorized tower for up to one week. The DPD Tow Monitor shall notify the Board of Police Commissioners each time such a suspension is issued.

**Tow Trucks, Machinery, and other Equipment**

Selected tow companies may either own or lease their towing equipment, provided the equipment is ade-quate and properly insured. Police authorized towers may not subcontract or assign any of the services required under their contracts.

*f. Facilities*

Police Authorized Towers must provide convenient, well-managed, and courteously operated storage fa-cilities for vehicles ordered impounded by the DPD. Tow companies shall maintain an office at each stor-age facility with sufficient space for all necessary business capabilities. Tow companies must maintain computers with software capabilities to collect vehicle information and other data, telephones, fax ma-chines for servicing the customer and the Department. All customer service phone lines shall be recorded. The recordings shall be retained for no less than 30 days.

Tow companies must maintain a toilet facility for use by customers. Police Authorized Towers shall be responsible for securing the facilities and for the safety and security of all towed vehicles. Tow companies shall install and maintain a digital video recording system of the customer service area that includes au-dio. Each yard / storage facility shall include a digital video recording system but will not require audio. All video and recordings shall be retained for not less than 45 days.

Police authorized towers may own or lease their storage facilities, provided the land and structures that make up the facilities comply with all local, state, and federal requirements. All police authorized towers shall operate and maintain their facilities in accordance with all applicable zoning requirements, local, state, and federal law.

The City shall have the right to enter the tow company's facilities at any time for purposes of inspecting the premises, vehicles on site, audio / video recordings, and any records pertaining to any vehicles being stored at the location.

To facilitate audits and inspections by DPD personnel, all vehicles ordered impounded by the DPD that are being stored by a selected tower shall be stored on the lot in an area that is separate and apart from any other vehicles stored on the premises.

DocuSign Envelope ID: 4154BF88-11C6-46A6-ARD8-B673C7288B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

### g. Posting of Required Information

Towing companies must purchase and post signage as directed by the DPD Tow Monitor. The signage shall be conspicuously posted in all customer service areas.

### h. Records

All police authorized towers must capture and maintain full and complete records on each vehicle for a period of not less than five (5) years following the release of the vehicle. The data shall be stored electronically and will be subject to inspection and audit with or without notice.[3] All tow companies must provide copies of records upon request.

Tow companies shall be required to photograph all vehicles prior to hook up and after the vehicle has been taken off the tow truck and placed at the lot. Each set of photographs must include the entire exterior of the vehicle, any areas damaged by the tow truck, and of the interior of the vehicle (as viewed from outside the vehicle). Photographs shall be maintained for a period of not less than five (5) years after the vehicle has been released from the company's possession. The photographs shall be maintained with the vehicle's file.

If the City procures specialized tow management software, the tow company must take all steps necessary to adapt its operations so that any vehicle ordered towed by the DPD is entered into the system in accordance with the City's / DPD's directives.

All selected tow companies shall maintain, in accordance with generally accepted accounting principles, complete and accurate books of account and records relating to all items of income received and expenses incurred in regard to police authorized towing. Such books of account and records shall be maintained at the site approved by the City. Authorized tow companies will be required to provide the City with a copy of their annual financial statement.

### i. Audits

The City and / or the DPD reserve the right to audit the books and records of each tow company in order to ensure compliance with these Requirements. This review may include, but may not be limited to, all monies collected by the tow company under the Contract and auction procedures.

### j. Fees

The City of Detroit, via its City Council and / or tow rate commission, shall determine the towing and storage fees that Police Authorized Towers may charge.

Tow companies must accept cash and at least three major credit cards, and the fees for cash and credit cards shall be the same. Any fees or losses resulting from such transactions shall be processed in accordance with normal business practices and shall in no event be the responsibility of the City. As part of the release of any police authorized tow, tow companies must create an invoice that itemizes all of the ser-

---

[3] The tow company must maintain records in such manner to permit searches based on date of impound, VIN, vehicle description, and impound location.

vices rendered and fees assessed against the vehicle. Tow companies must issue sequential receipts, which shall be attached to the invoice.

Authorized tow companies must promptly return vehicles when presented with the following:

- Payment of fees;
- Proof of ownership or authority to redeem the vehicle;
- Proof of insurance if the individual redeeming the vehicle desires to drive the vehicle off of the lot; and
- Proof that a tow company is properly licensed to operate if the individual redeeming the vehicle desires to have the vehicle towed off of the lot.

Tow companies are free to advertise and offer their services to any customer following the release of any vehicle ordered impounded by the Department. Under no circumstances, however, shall the prompt release of a customer's vehicle be conditioned on the acceptance of such services. To ensure compliance with this rule, no towing company may provide additional services without first providing notice to the customer that (1) the customer may obtain release of the vehicle for the amount listed on the towing invoice, (2) the customer is not obligated to employ the tow company to perform any additional towing services as a condition of releasing the vehicle, and (3) that the customer is free to hire a tow company of their own choosing. A copy of the notice, signed by the customer, shall be kept on file with the tow company.

### k. Fee Reductions and Waivers

The DPD Tow Monitor may direct a tow company to reduce or waive towing or storage fees for any legitimate reason. The tow company may request the DPD Tow Monitor to issue his / her directive in writing and to state the reason for the fee waiver or reduction. The term "legitimate reason" includes, but is not limited to, the following:

- The owner of the vehicle is experiencing financial or other form of hardship;
- A member of the Department erred in ordering the vehicle impounded;
- The owner or lessee of a vehicle was not properly notified that the vehicle had been recovered.

In the event the DPD Tow Monitor directs a reduction in fees in excess of what is owed in storage, he / she shall ensure the tow company is given an additional tow opportunity. Contractor waives and releases the City and DPD, and their employees and agents, from any liability with respect to fee waivers under this section.

In addition to the foregoing, vehicle owners may obtain a waiver of fees based on poverty in situations involving stolen vehicles. The application for such waivers is attached as Exhibit A-1.

### l. Insurance Requirements

Police authorized towers must maintain, at a minimum and at its own expense, the insurance indicated in Article 10 of the Contract.

DocuSign Envelope ID: 4154BF88-11C6-46A6-ARD9-8673C7888B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

#### m. Auctions

The Contractor shall maintain an account with the State of Michigan necessary for the State to issue Tr-52's / Bill of Sale. Upon receiving information that a tow company has failed to maintain the necessary account, the DPD Tow Monitor shall immediately suspend the company from police authorized towing activities. A tow company may request reinstatement after re-establishing the appropriate account with the State. All tow companies will be required to cooperate with the Department and comply with the Department's protocols with regard to abandoned vehicle sales.

#### n. Tow Release Procedures

The Department shall provide the public with a Department telephone number that citizens may call to obtain information on towed vehicles. Tow companies must promptly return vehicles when presented with sufficient proof of payment and ownership pursuant to applicable law and any guidelines provided by the City and designated department personnel.

#### o. Holds

Members of the Department are authorized to place holds on vehicles or other items towed to a police authorized tower's facility. Holds must be communicated in writing by officer requesting the hold to the tow company. In the event the officer requesting the hold fails to notify the tow company in writing, the tow company shall promptly notify the DPD Tow Monitor of the occurrence and shall be guided by the DPD Tow Monitor's direction. Where a proper hold has been applied to a vehicle or other item, the tow company must not release the vehicle without written authorization from the Department.

#### p. Unclaimed Vehicles

Police authorized towers must maintain a list of all vehicles that have remained unclaimed for a period of seven days or more. The list shall be in a format prescribed by the Department and shall be transmitted to a prescribed e-mail address by noon each Monday.

### 3. Monitoring Process

The Department, with input from the Board of Police Commissioners, will monitor the towing process and may appoint a Tow Monitor. If a Tow Monitor is appointed, he / she will select a team of sworn and / or civilian personnel who will serve as an investigation unit and liaison between all tow companies and the City of Detroit. This team will also be responsible for monitoring tow company performance by conducting site visits and will report any apparent deficiencies or violations of these standards to the Board of Police Commissioners and, where appropriate, to the Office of Contracting and Procurement, and to the Office of the Inspector General.

No tower shall attempt to seek legal advice from the DPD Tow Monitor or any City employee or official. In his / her discretion, the DPD Tow Monitor may issue advisory letters in response to questions asked by contracted towers based on his / her interpretation of these Requirements.

Except for formal advisory letters issued by the DPD Tow Monitor, tow companies are strictly prohibited from attempting to use any statements issued by the DPD Tow Monitor or any City employee or official to explain or justify any deviation or violation of these Requirements.

Furthermore, no City employee or official, including, but not limited to, the DPD Tow Monitor, has the authority to authorize a tower to violate the governing Contract including these Requirements, , or local, state, or federal laws. It is the sole responsibility of the Contractor to ensure compliance with the foregoing.

## 4.   Legal Considerations

### a. Conflicts of Interest

The following are strictly prohibited:

(i)   For any officer, agent, or employee of the City (including but not limited to police officers) or any other public official to hold any personal or financial interest, directly or indirectly in any Police Authorized Tower.

(ii)  For any Police Authorized Tow company to hire or retain the services of any employee of the DPD, or any Board member, at a time when such person is a public employee or official or for a period of at least one year thereafter.

(iii) For any Police Authorized Tow company to hire any person with an interest that could possibly conflict in any manner with the performance of an authorized tower's responsibilities pursuant to a towing contract.

### b. Non-Transferability

Any contract to provide towing services to the City cannot be transferred, sold, subcontracted, or assigned to any other person or entity. Selected tow companies must notify the Department of any intent to sell, or in any manner transfer, the entire company, 10% or more of the company's assets or outstanding stock, or if there is a change in any of the partners, owners, or officers of the company, or of any material change in the operations of the company.

### c. Termination and Suspension

The City reserves the right to terminate or suspend any towing contract for convenience or for cause, without notice and without any right to a hearing.

In the event the DPD Tow Monitor suspends a towing contract without the involvement of the Office of Contracting and Procurement, the DPD Tow Monitor shall immediately file a memorandum with the Board of Police Commissioners explaining the decision to take such action. The Board in its discretion may convene a hearing and may either affirm the DPD Tow Monitor's decision or request that the DPD Tow Monitor rescind the suspension or termination.

DocuSign Envelope ID: 4154BF88-1CC6-46A6-ARD9-8673C7288B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

EXHIBIT A-1

[DPD LETTERHEAD]

## APPLICATION BY VEHICLE OWNER FOR A POVERTY WAIVER OF DETROIT POLICE DEPARTMENT AUTHORIZED TOWING AND STORAGE FEES

The Detroit Police Department (DPD) has implemented a discretionary program allowing owners of vehicles stolen in the city of Detroit to apply for a poverty waiver for DPD authorized towing and storage fees.

If your vehicle was stolen, and, for reasons of poverty you are unable to pay the towing and storage fees to retrieve it, you may be eligible for a waiver. **Please Note**: You are still required to pay the $75 administrative fee.

To qualify for the waiver, your annual household income (determined based on the incomes of all members of the household) must be less than the amounts listed below - which represent the current poverty threshold. For households larger than 8, add $4,749.00 for each household member:

| Number in Household | Maximum Income |
|---|---|
| 1 | $17,774.00 |
| 2 | $21,427.00 |
| 3 | $23,717.00 |
| 4 | $27,560.00 |
| 5 | $31,040.00 |
| 6 | $35,580.00 |
| 7 | $40,120.00 |
| 8 | $44,660.00 |

## PART I - PERSONAL INFORMATION
1. Applicant's Name _____
2. Applicant's Driver's License Number _____
3. Daytime Phone Number _____ 4. Age _____
5. Street Address _____
6. Total number of individuals in your household_____

## PART 2 – VEHICLE AND TOWING INFORMATION

1. License Plate Number _____

2. Make,           Model           and           Color
_____

3. Name          of          Registered          Owner
_____

4. Name    and    contact    information    for    insurance    carrier
_____
_____

5. Do you have "comprehensive" insurance or other insurance coverage for towing and storage fees? _____

6. Name, address and phone number of the towing company_____
_____

7. Date    the    vehicle    was    reported    to    DPD    as    stolen_____

8. Towing fees_____       Storage fees_____

## PART 3 – SUPPORTING DOCUMENTATION.

Provide at least one of the following documents to support your poverty claim:

      (i)      Most recent federal income tax return
      (ii)     SSI/SSA/SSD (letter or 1099)
      (iii)    FIA/DHS (award letter, including food stamps award letter) **or**
      (iv)    Other documents supporting the application

## PART 4 – SIGNATURE AND VERIFICATION

     The undersigned vehicle owner ("Applicant") hereby applies for a hardship waiver. Applicant certifies, under the penalty of perjury, that all information in this application is true, correct, and complete. Any Applicant who provides false, misleading, or incomplete information will be prosecuted to the full extent of the law. Failure to cooperate fully is grounds for denial of the application.

Signature: _____
Print name: _____
Date: _____

## PART 6 – NOTICE OF APPEAL RIGHTS.

If your application is denied, you can appeal in writing, within 30 days, to the City of Detroit Board of Police Commissioners **via email**: _____ or **first class mail**: _____

_____.

## FOR DPD USE ONLY - DECISION AND REASONS

The application is:

☐ Granted

☐ Denied for the following reasons:

_____
_____
_____
_____

Signature: _____
Name and Rank: _____
Date: _____

## EXHIBIT B: FEE SCHEDULE

I.  **General**
    This Exhibit B applies to services provided by the Contractor to the City of Detroit or DPD as provided in Exhibit A:

(a) The Contractor shall be paid for those Services performed pursuant to this Contract a maximum amount of <u>One Hundred Eighty-Seven Thousand, Five Hundred and 00/100 Dollars ($187,500.00)</u>, for the term of this Contract as set forth in Exhibit A, Scope of Services.

(b) Payment for the proper performance of the Services shall be contingent upon receipt by the City of invoices for payment. Each invoice shall certify the total cost, itemizing costs when applicable. Each invoice must be received by the City not more than thirty (30) days after the close of the calendar month in which the services were rendered and must be signed by an authorized officer or designee of the Contractor.

## II. Rates for out-of-City tow retrievals

The following rates apply for tow retrievals of vehicles located outside the City of Detroit. The mileage is to be calculated from the point at which the tow truck exits the City of Detroit city limits to retrieve the vehicle, to the point at which the tow truck and towed vehicle re-enters the City of Detroit city limits, using the most reasonably efficient route:

$4.00 per mile

$6.95 per mile (heavy duty tows only)

### EXHIBIT C: STATEMENT OF POLITICAL CONTRIBUTIONS AND EXPENDITURES

**"City Charter § 4-122, ¶ 2:** For purposes of conflicts of interest, the City shall require in all of its contractual agreements, including, but not limited to, leases, service and equipment agreements and including contract renewals, that the contractor provide a statement listing all political contributions and expenditures ("**Statement of Political Contributions and Expenditures**"), as defined by the Michigan Campaign Finance Act, MCL 169.201, et seq., made by the contractor, its affiliates, subsidiaries, principals, officers, owners, directors, agents or assigns to elective city officials within the previous four (4) years. Individuals shall also list any contributions or expenditures from their spouses."

**Instructions:    In accordance with Section 4-122 of the 2012 Detroit City Charter, you must provide the following information, sign this document, have it notarized, and submit it to the City. If additional space is needed, please enter "see additional sheet(s)" on the last row and attach additional sheets.**

In Column A, enter the name of the person or company that made the contribution or expenditure. If there were no political contributions or expenditures made, enter NONE.

In Column B, enter the relationship of the donor to the contractor or vendor, that is, contractor, affiliate, subsidiary, principal, officer, owner, director, agent, assignee, or spouse of any of the foregoing who are individuals.

In Column C, enter the name of the recipient, an elective city official which under Charter § 3-107, includes only the Mayor, the City Clerk, and members of the City Council and the Board of Police Commissioners.

In Column D, enter the amount of the contribution or expenditure, as defined in the Michigan Campaign Finance Act, 1976 PA 388, MCL 169.204 and MCL 169.206.

In Column E, enter the date of the contribution or expenditure. This statement must include all contributions and expenditures within the previous four years.

| A | B | C | D | E |
|---|---|---|---|---|
| **Donor** | **Relationship to Contractor/Vendor** | **Recipient** | **Amount of Contribution or Expenditure** | **Date** |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

DocuSign Envelope ID: 4154BF88-14C6-46A6-ABD6-86F3C7898B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

**(EXHIBIT C - continued)**
## STATEMENT OF POLITICAL CONTRIBUTIONS AND EXPENDITURES

Except as set forth above, I certify that no contributions or expenditures were made to elective city officials within the previous four (4) years by the contractor, its affiliates, subsidiaries, principals, officers, owners, directors, agents, assigns, and, if any of the foregoing are individuals, their spouses.

I understand that the information provided in this disclosure will be relied upon by the City of Detroit in evaluating the proposed bid, solicitation, contract, or lease.  I swear [or affirm] that the information provided is accurate.  If I am signing on behalf of an entity, I swear [or affirm] that I have the authority to provide this disclosure on behalf of the entity.

Sign name: _____

Print name: _____

Sworn and subscribed to before me on_____, 20_____
[by_____, the _____of the above named contractor/vendor, an authorized representative or agent of the contractor/vendor]

Sign: _____
Print: _____
Notary Public, _____ County, Michigan,
Acting in _____ County
My Commission Expires: _____

DocuSign Envelope ID: 4154BF88-11C6-46A6-A8D8-8673C7288B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

## EXHIBIT D: COVID GENERAL CONDITIONS

The City of Detroit has sought to obtain federal funding to augment its response to the COVID-19 pandemic (the "Pandemic"). The following provisions are defined as a requirement associated with the impact of the Pandemic and are attached and incorporated by reference herein to the Professional Services Contract (the "Contract") with Troy's Towing, Inc. To the extent any such provisions conflict with the Contract, the Contract's provisions shall control.

### I. Procurement Policy

Procurement for the City of Detroit has provided a transparent, open, and fair opportunity for all eligible Contractors to participate. This bid has been made without collusion with any other person, firm or corporation making any bid or proposal, or who otherwise makes a bid or proposal. The Contractor must have a valid Contract or purchase order with the signature of the Chief Procurement Officer to receive payment for goods or services rendered. If the Contractor performs any work without a valid Contract or purchase order, the Contractor will not be paid.

### II. Bonds and Insurance Requirements

Receipt of bonds and/or insurance is part of the process of determining which Contractor may be recommended for award to the City Council. If cause is found to change the recommendation that a Contractor be awarded the contract, or if the City Council does not approve the recommendation, the City shall not be liable for any costs incurred by the Contractor in the bid process, including the cost of acquiring bonds and/or insurance. This subsection III is applicable only to Contracts pertaining to construction or facility improvement.

### III. Equal Employment Opportunity

In addition to the fair employment practices agreed to be the Contractor in Article 19 of the Contract, the Contractor hereby agrees as follows:

(a)     The Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, sexual orientation, gender identity, or national origin. The Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment without regard to their race, color, religion, sex, sexual orientation, gender identity, or national origin. Such action shall include, but not be limited to the following: Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided setting forth the provisions of this nondiscrimination clause.

(b)     The Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, sexual orientation, gender identity, or national origin.

(c)     The Contractor will not discharge or in any other manner discriminate against any employee or applicant for employment because such employee or applicant has inquired about, discussed, or disclosed the compensation of the employee or applicant or another employee or applicant. This provision shall not apply to instances in which an employee who has access to the compensation information of other employees or applicants as a part of such employee's essential job functions discloses the compensation of such other employees or applicants to individuals who do not otherwise have access to such information, unless such disclosure is in response to a formal complaint or charge, in furtherance of an investigation, proceeding, hearing, or action, including an investigation conducted by the employer, or is consistent with the Contractor's legal duty to furnish information.

(d)     The Contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other Contract or understanding, a notice to be provided advising the said labor union or workers' representatives of the Contractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(e)     The Contractor will comply with all provisions of Executive Order 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(f)     The Contractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the administering agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(g)     In the event of the Contractor's noncompliance with the nondiscrimination clauses of this Contract or with any of the said rules, regulations, or orders, this Contract may be canceled, terminated, or suspended in whole or in part and the Contractor may be declared ineligible for further Government Contracts or federally assisted construction Contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(h)     The Contractor will include the portion of the sentence immediately preceding paragraph (1) and the provisions of paragraphs (1) through (8) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant

DocuSign Envelope ID: 4154BE88-13C6-46A6-ABD9-8673C7888B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

to section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The Contractor will take such action with respect to any subcontract or purchase order as the administering agency may direct as a means of enforcing such provisions, including sanctions for noncompliance: Provided, however, that in the event a Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the administering agency, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

(i)     The City of Detroit further agrees that it will be bound by the above equal opportunity clause with respect to its own employment practices when it participates in federally assisted construction work: Provided, That if the City of Detroit so participating is a State or local government, the above equal opportunity clause is not applicable to any agency, instrumentality or subdivision of such government which does not participate in work on or under the Contract. The City of Detroit agrees that it will assist and cooperate actively with the administering agency and the Secretary of Labor in obtaining the compliance of Contractors and subcontractors with the equal opportunity clause and the rules, regulations, and relevant orders of the Secretary of Labor, that it will furnish the administering agency and the Secretary of Labor such information as they may require for the supervision of such compliance, and that it will otherwise assist the administering agency in the discharge of the agency's primary responsibility for securing compliance. The City of Detroit further agrees that it will refrain from entering into any Contract or Contract modification subject to Executive Order 11246 of September 24, 1965, with a Contractor debarred from, or who has not demonstrated eligibility for, Government Contracts and federally assisted construction Contracts pursuant to the Executive Order and will carry out such sanctions and penalties for violation of the equal opportunity clause as may be imposed upon Contractors and subcontractors by the administering agency or the Secretary of Labor pursuant to Part II, Subpart D of the Executive Order. In addition, the City of Detroit agrees that if it fails or refuses to comply with these undertakings, the administering agency may take any or all of the following actions: cancel, terminate, or suspend in whole or in part this contract; refrain from extending any further assistance to the City of Detroit under the program with respect to which the failure or refund occurred until satisfactory assurance of future compliance has been received from such City of Detroit; and refer the case to the Department of Justice for appropriate legal proceedings.

## IV. Federal Compliance

The following provisions shall apply unless otherwise provided in Federal Law:

(a) Consistent with the **Davis-Bacon Act (40 U.S.C. 3141-3148)**, the parties agree as follows:

1.  All transactions regarding this Contract shall be done in compliance with the Davis-Bacon Act (40 U.S.C. 3141- 3144, and 3146-3148) and the requirements of 29 C.F.R.

DocuSign Envelope ID: 4154BF88-11C6-46A6-ABD9-8673C7298B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

pt. 5 as may be applicable. The Contractor shall comply with 40 U.S.C. 3141-3144, and 3146-3148 and the requirements of 29 C.F.R. pt. 5 as applicable.

2.  Contractors are required to pay wages to laborers and mechanics at a rate not less than the prevailing wages specified in a wage determination made by the Secretary of Labor.

3.  Contractors are required to pay wages not less than once a week.

4.  This subsection (a) is applicable only to the extent the Contract pertains to construction work.

(b) Consistent with the **Copeland Anti-Kickback Act**, the parties agree as follows:

1.  The Contractor shall comply with 18 U.S.C. § 874, 40 U.S.C. § 3145, and the requirements of 29 C.F.R. pt. 3 as may be applicable, which are incorporated by reference into this Contract.

2.  The Contractor or subcontractor shall insert in any subcontracts the clause above and such other clauses as FEMA may by appropriate instructions require, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime Contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all of these Contract clauses.

3.  A breach of the Contract clauses above may be grounds for termination of the Contract, and for debarment as a Contractor and subcontractor as provided in 29 C.F.R. § 5.12."

4.  This subsection (b) is applicable only to the extent the Contract pertains to construction work,

(c) Consistent with the **Contract Work Hours and Safety Standards Act (40 U.S.C. 3701-3708)**, the parties agree as follows:

1.  No Contractor or subcontractor Contracting for any part of the Contract work which may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of forty hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of forty hours in such workweek.

2.  In the event of any violation of the clause set forth in paragraph (1) of this section the Contractor and any subcontractor responsible therefor shall be liable for the unpaid

DocuSign Envelope ID: 4154BE88-13C6-46A6-ABD9-8673C7898B8F
DocuSign Envelope ID: 6A20C7BB-8091-4695-B6D5-B509ECAC3FA2

wages. In addition, such Contractor and subcontractor shall be liable to the United States for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of the clause set forth in paragraph (1) of this section, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of forty hours without payment of the overtime wages required by the clause set forth in paragraph (1) of this section.

3. The City of Detroit shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld, from any moneys payable on account of work performed by the Contractor or subcontractor under any such Contract or any other Federal Contract with the same prime Contractor, or any other federally-assisted Contract subject to the Contract Work Hours and Safety Standards Act, which is held by the same prime Contractor, such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in paragraph (2) of this section.

4. The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in paragraphs (1) through (4) of this section and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime Contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the clauses set forth in paragraphs (1) through (4) of this section.

5. This subsection (c) is applicable only to the extent the Contract is for a sum greater than One Hundred Thousand and 00/100 Dollars ($100,000.00),

(d) Consistent with the **Clean Air Act (42 U.S.C. 7401-7671q.)** and the **Federal Water Pollution Control Act (33 U.S.C. 1251-1387)**, the parties agree as follows:

1. The Contractor agrees to comply with all applicable standards, orders or regulations issued pursuant to the Clean Air Act, as amended, 42 U.S.C. § 7401 et seq.

2. The Contractor agrees to report each violation to the City of Detroit and understands and agrees that the Contractor will, in turn, report each violation as required to assure notification to the Federal Emergency Management Agency, and the appropriate Environmental Protection Agency Regional Office.

3. The Contractor agrees to include these requirements in each subcontract exceeding $150,000 financed in whole or in part with Federal assistance provided by FEMA.

4. The Contractor agrees to comply with all applicable standards, orders, or regulations issued pursuant to the Federal Water Pollution Control Act, as amended, 33 U.S.C. 1251 et seq.

5. The Contractor agrees to report each violation to the City of Detroit and understands and agrees that the City of Detroit will, in turn, report each violation as required to assure notification to the Federal Emergency Management Agency, and the appropriate Environmental Protection Agency Regional Office.

6. This subsection (d) is applicable only to the extent the Contract is for a sum greater than One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00),

(e) Consistent with the **Byrd Anti-Lobbying Amendment (31 U.S.C. § 1352, as amended)**, the parties agree as follows:

1. Contractors who apply or bid for an award of $100,000 or more shall file the required certification. Each tier certifies to the tier above that it will not and has not used Federal appropriated funds to pay any person or organization for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, officer or employee of Congress, or an employee of a Member of Congress in connection with obtaining any Federal Contract, grant, or any other award covered by 31 U.S.C. § 1352.

2. Each tier shall also disclose any lobbying with non-Federal funds that takes place in connection with obtaining any Federal award. Such disclosures are forwarded from tier to tier up to the recipient who in turn will forward the certification(s) to the awarding agency.

3. This subsection (e) is applicable only to the extent the Contract is for a sum greater than One Hundred Thousand and 00/100 Dollars ($100,000.00),

(f) Debarment and Suspension.

1. This Contract is a covered transaction for purposes of 2 C.F.R. pt. 180 and 2 C.F.R. pt. 3000. As such, the Contractor is required to verify that none of the Contractor's principals (defined at 2 C.F.R. § 180.995) or its affiliates (defined at 2 C.F.R. § 180.905) are excluded (defined at 2 C.F.R. § 180.940) or disqualified (defined at 2 C.F.R. § 180.935).

2. The Contractor must comply with 2 C.F.R. pt. 180, subpart C and 2 C.F.R. pt. 3000, subpart C, and must include a requirement to comply with these regulations in any lower tier covered transaction it enters into.

3. This certification is a material representation of fact relied upon by Contractor. If it is later determined that the Contractor did not comply with 2 C.F.R. pt. 180, subpart C and 2 C.F.R. pt. 3000, subpart C, in addition to remedies available to Contractor, the Federal Government may pursue available remedies, including but not limited to suspension and/or debarment.

4. The bidder or proposer agrees to comply with the requirements of 2 C.F.R. pt. 180, subpart C and 2 C.F.R. pt. 3000, subpart C while this offer is valid and throughout the period of any Contract that may arise from this offer. The bidder or proposer further agrees to include a provision requiring such compliance in its lower tier covered transactions.

(g) Procurement and Recovered Materials.

1. In the performance of this Contract, the Contractor shall make maximum use of products containing recovered materials that are EPA-designated items unless the product cannot be acquired: (i) competitively within a timeframe providing for compliance with the Contract performance schedule; (ii) meeting Contract performance requirements; or (iii) at a reasonable price.

2. Information about this requirement, along with the list of EPA-designated items, is available at EPA's Comprehensive Procurement Guidelines web site, https://www.epa.gov/smm/comprehensive- procurement-guideline-cpg-program.

(h) Prohibition of Certain Telecommunication Services and Equipment.

1. Recipients and subrecipients are prohibited from obligating or expending loan or grant funds to (i) procure or obtain; (ii) extend or renew a contract to procure or obtain; or (iii) enter into a contract (or extend or renew a contract) to procure or obtain equipment, services, or systems that uses covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology as part of any system. As described in Public Law 115-232, section 889, covered telecommunications equipment is telecommunications equipment produced by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities).

   i. For the purpose of public safety, security of government facilities, physical security surveillance of critical infrastructure, and other national security purposes, video surveillance and telecommunications equipment produced by Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities).

    ii.  Telecommunications or video surveillance services provided by such entities or using such equipment.

    iii.  Telecommunications or video surveillance equipment or services produced or provided by an entity that the Secretary of Defense, in consultation with the Director of the National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise connected to, the government of a covered foreign country.

2.  In implementing the prohibition under Public Law 115-232, section 889, subsection (f), paragraph (1), heads of executive agencies administering loan, grant, or subsidy programs shall prioritize available funding and technical support to assist affected businesses, institutions and organizations as is reasonably necessary for those affected entities to transition from covered communications equipment and services, to procure replacement equipment and services, and to ensure that communications service to users and customers is sustained.

3.  See Public Law 115-232, section 889 for additional information. See also §200.471.

(i)  Records Requirements.

1.  The Contractor agrees to provide the City, the FEMA Administrator, the Comptroller General of the United States, and any other authorized representative access to any books, documents, papers, and records of the Contractor which are directly pertinent to this Contract for the purposes of making audits, examinations, excerpts, and transactions.

2.  The Contractor agrees to permit any of the foregoing parties to reproduce, by any means whatsoever, or to copy excerpts and transcriptions as reasonably required.

3.  The Contractor agrees to provide the FEMA Administrator or authorized representatives access to construction or other work sites pertaining to the work being completed under the contract.

4.  In compliance with the Disaster Recovery Act of 2018, the City and the Contractor acknowledge and agree that no language in this Contract is intended to prohibit audits or internal reviews by the FEMA Administrator or the Comptroller General of the United States.

5.  This subsection (h) is applicable only to Contracts pertaining to construction or facility improvement.

(j) Domestic Preferences for Procurements.

1. As appropriate and to the extent consistent with law, the non-Federal entity should, to the greatest extent practicable under a Federal award, provide a preference for the purchase, acquisition, or use of goods, products, or materials produced in the United States (including but not limited to iron, aluminum, steel, cement, and other manufactured products). The requirements of this section must be included in all subawards including all contracts and purchase orders for work or products this award.

i. For purposes of this section: (i) "produced in the United States" means, for iron and steel products, that all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States; and (ii) "manufactured products" means items and construction materials composed in whole or in part of non-ferrous metals such as aluminum; plastics and polymer-based products such as polyvinyl chloride pipe; aggregates such as concrete; glass, including optical fiber; and                                                                                               lumber.

(k) Federal Acquisitions Regulation Compliance.

1. All transactions regarding this Contract and subject to the applicable law shall be done in compliance with the Federal Acquisitions Regulations guidance 6.302-2 (unusual and compelling urgency. The Contractor shall comply with 10 U.S.C. 2304(c)(2) or 41 U.S.C. 3304(a)(2), as well as Title 2 CFR 200(e) as applicable, which are incorporated by reference into this Contract and quoted in full below:

    (a) Authority.
        (1) Citations: 10 U.S.C.2304(c)(2) or 41 U.S.C.3304(a)(2).
        (2) When the agency's need for the supplies or services is of such an unusual and compelling urgency that the Government would be seriously injured unless the agency is permitted to limit the number of sources from which it solicits bids or proposals, full and open competition need not be provided for.
    (b) Application. This authority applies in those situations where-
        (1) An unusual and compelling urgency precludes full and open competition; and
        (2) Delay in award of a contract would result in serious injury, financial or other, to the Government.
    (c) Limitations.
        (1) Contracts awarded using this authority shall be supported by the written justifications and approvals described in 6.303 and 6.304. These justifications may be made and approved after contract award when preparation and approval prior to award would unreasonably delay the acquisition.
        (2) This statutory authority requires that agencies shall request offers from as many potential sources as is practicable under the circumstances.
    (d) Period of Performance.
        (1) The total period of performance of a contract awarded or modified using this authority-

      (i) May not exceed the time necessary:

            (A) To meet the unusual and compelling requirements of the work to be performed under the contract; and

            (B) For the agency to enter into another contract for the required goods and services through the use of competitive procedures; and

      (ii) May not exceed one year, including all options, unless the head of the agency determines that exceptional circumstances apply. This determination must be documented in the contract file.

(2)(i) Any subsequent modification using this authority, which will extend the period of performance beyond one year under this same authority, requires a separate determination. This determination is only required if the cumulative period of performance using this authority exceeds one year. This requirement does not apply to the exercise of options previously addressed in the determination required at paragraph (d)(1)(ii) of this section. (ii) The determination shall be approved at the same level as the level to which the agency head authority in paragraph (d)(1)(ii) of this section is delegated.

(3) The requirements in paragraphs (d)(1) and (2) of this section shall apply to any contract in an amount greater than the simplified acquisition threshold.

(4) The determination of exceptional circumstances is in addition to the approval of the justification in 6.304.(5) The determination may be made after contract award when making the determination prior to award would unreasonably delay the acquisition.

2.  This subsection (i) is applicable only to Contracts involving the receipt of Federal Transit Administration funding.  N/A